E. E. Androvette et al. *v.* United States[1]

[1] C. D. 63.

United States Customs Court, Second Division

 (Decided December 2, 1938)

*Walden & Webster* (*Jacob L. Klingaman* of counsel) for the plaintiffs.
*Webster J. Oliver*, Assistant Attorney General (*Charles D. Lawrence*, special
assistant to the Attorney General, *Richard E. FitzGibbon*, special attorney, and
*James F. Donnelly*, junior attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

KINCHELOE, Judge: These suits are before us, at this time, solely
on the question of a motion to dismiss made by the Government.
Although various claims are embodied in the protests, it would appear
from the brief filed by counsel for the plaintiffs that the only claim
urged is the one for refund of the compensating tax assessed under the
Agricultural Adjustment Act on certain "large cotton bags."

On the calendar call of the cases they were consolidated for trial
and the Government then moved for dismissal on the ground this
court has no jurisdiction to hear and determine the issue under the
decision of the United States Court of Customs and Patent Appeals in
the case of *United States* v. *Marshall Field & Co.*, 25 C. C. P. A. 308,
T. D. 49422. (Said motion was taken under advisement.) That
case held that this court is without jurisdiction in suits to recover
compensating taxes assessed under the Agricultural Adjustment Act.

Counsel for the plaintiffs contend that a different set of facts exists
in the present instance that invoke certain provisions of the law
which make inapplicable the conclusion reached in the *Marshall Field*
case, *supra*. Section 15 of the Agricultural Adjustment Act reads as
follows:

SEC. 15. (a) If the Secretary of Agriculture finds, upon investigation at any
time and after due notice and opportunity for hearing to interested parties, that
any class of products of any commodity is of such low value compared with the
quantity of the commodity used for their manufacture that the imposition of
the processing tax would prevent in whole or in large part the use of the com-
modity in the manufacture of such products and thereby substantially reduce
consumption and increase the surplus of the commodity, then the Secretary of
Agriculture shall so certify to the Secretary of the Treasury, and the Secretary
of the Treasury shall abate or refund any processing tax assessed or paid after
the date of such certification with respect to such amount of the commodity as is
used in the manufacture of such products.

On June 26, 1934, and again on August 24, 1935, that section was
amended, and by reason of those amendments it then read as follows:

SEC. 15. (a) If at any time the Secretary of Agriculture finds, upon investiga-
tion and after due notice and opportunity for hearing of interested parties, that

any class of products of any commodity is of such low value, considering the quantity of the commodity used for their manufacture, that the imposition of the processing tax would prevent in whole or in large part the use of the commodity in the manufacture of such products and thereby substantially reduce consumption and increase the surplus of the commodity, then the Secretary of Agriculture shall so certify to the Secretary of the Treasury, specifying whether such result will in his judgment most effectively be prevented by a suspension of the imposition of the processing tax or a refund of the tax paid, with respect to such amount of the commodity or any product thereof as is used in the manufacture of such products, and thereafter, as shall be specified in such certification, (1) the imposition of the processing tax shall be suspended with respect to such amount of the commodity as is used in the manufacture of such products, and thereafter, as shall be specified in such certification, (2) the imposition of the processing tax shall be suspended with respect to such amount of the commodity as is used in the manufacture of such products until such time as the Secretary of Agriculture, after further investigation and due notice and opportunity for hearing to interested parties, revokes his certification to the Secretary of the Treasury, or (3) the Secretary of the Treasury shall refund (in accordance with the provisions of, to such persons and in such manner as shall be specified in, such certification) the amount of any tax paid (prior to the date of any revocation by the Secretary of Agriculture of his certification to the Secretary of the Treasury, upon further investigation and after due notice and opportunity for hearing to interested parties) under this title with respect to such amount of the commodity or any product thereof as is used after the date of such certification in the manufacture of such products, or shall credit against any tax due and payable under this title the amount of tax which would be refundable. During the period in which any certificate under this section is effective, the provisions of subsection (e) of this section shall be suspended with respect to all imported articles of the kind described in such certificate; and notwithstanding the provisions of section 21, any compensating taxes, which have heretofore, during the period in which any certificate under this section has been effective, become due and payable upon imported articles of the kind described in such certificate, shall be refunded by the Secretary of the Treasury, if the same have been paid, or, if the same have not been paid the amount thereof shall be abated. Notwithstanding the provisions of section 21, the Secretary of the Treasury shall refund or credit any processing tax paid on or before June 12, 1934, with respect to such amount of cotton as was used in the manufacture of large cotton bags (as defined in the Certificate of the Secretary of Agriculture, dated June 12, 1934) between June 13 and July 7, 1934, both inclusive.

On June 12, 1934, the Secretary of Agriculture executed a certificate to the Secretary of the Treasury under the above section 15, which covered "large cotton bags," and on July 7, 1934, he issued a supplementary certificate in which he certified that the reduction of cotton consumption resulting from the tax on large cotton bags could be most effectively prevented by refunding to the bag manufacturer such taxes as had been paid.

It is based upon the foregoing that the plaintiffs contend that the compensating tax is not properly assessable on the merchandise covered by these suits; and that such taxes which had been paid

should be refunded "notwithstanding the provisions of section 21" of the Agricultural Adjustment Act, which, among other things, prohibited the refund of taxes under the said act, in the absence of proof that the claimant had absorbed the tax.

In the Revenue Act of 1936 Congress repealed certain sections of the Agricultural Adjustment Act, and substituted a remedy to be applied for the recovery of certain taxes paid under the Agricultural Adjustment Act.

Section 905 of the Revenue Act of 1936 expressly stated that "the United States Customs Court shall not have jurisdiction of any such cases." But the plaintiffs herein contend that the provisions of section 911 of that act have preserved the rights and the jurisdiction of this court, so far as they concern "large cotton bags," which, it is claimed, are the subject of these cases. Section 911 of the Revenue Act of 1936 reads as follows:

The provisions of this title shall not apply to any refund authorized under the provisions of sections 15, 16, or 17 of the Agricultural Adjustment Act, as amended and reenacted, or with respect to any articles exported under the provisions of section 317 of the Tariff Act of 1930. No refund shall be made or allowed of any amount paid or collected as tax under the Agricultural Adjustment Act, as amended and reenacted, to the extent that refund or credit with respect to such amount has been made to any person.

To give clarification to the language of the above-quoted section 911, we quote from Senate Report No. 2156, accompanying H. R. 12395 (H. R. 12739), Revenue Bill of 1936, the following explanation of said section:

Section 911 is designed to prevent two refunds with respect to the same amount collected under the Agricultural Adjustment Act. Section 911 also provides that the provisions of this title do not apply to export, charitable, and certain other refund claims, the adjustment of which is authorized by sections 15, 16, and 17 of the Agricultural Adjustment Act and section 601 of H. R. 12395. It is necessary to provide specifically that this title does not apply to such claims so that there will be no confusion between the provisions of this title and section 601 of H. R. 12395. It is not the intent of this section, however, to limit the rights of processors who have paid processing taxes on articles or commodities which they have themselves subsequently exported or delivered for charitable distribution or use to obtain refunds of such processing taxes subject to the requirements of this title, since such processors are, with one minor exception, not entitled to the benefits of section 601 of Title IV.

Section 601 (a) of the Revenue Act of 1936 provides for the reenactment of certain provisions of the Agricultural Adjustment Act, including section 15 (a), with which we are here concerned,

but only for the purpose of allowing refunds in accordance therewith in cases where the delivery for charitable distribution or use, or the exportation, or the manufacture of large cotton bags, or the decrease in the rate of the processing tax (or its equivalent under section 16 (e) (3)), took place prior to January 6, 1936.

Subsections (b), (c), and (d), of section 601 relate to conditions governing refunds, pursuant to the above provision, and subsection (e) states that:

The determination of the Commissioner of Internal Revenue with respect to any refund under this section shall be final and no court shall have jurisdiction to review such determination.

There is no question that the assessment made on the merchandise involved in these suits was a compensating tax under the provisions of section 15 (e) of the Agricultural Adjustment Act. The same was true in the *Field* case, *supra,* upon which the defendant relies in its motion for dismissal. But there is a distinction between the question raised before the court in the *Field* case, and the issue raised here. There, the claim was made for refund of the tax on the ground of unconstitutionality; here, the refund is asked pursuant to the provisions of section 15 (a) of the Agricultural Adjustment Act, as amended, and heretofore quoted.

Although plaintiffs concede that section 905 of the Revenue Act of 1936 divested this court of jurisdiction to entertain suits for the refund of compensating taxes assessed under the provisions of the Agricultural Adjustment Act, yet they contend that section 911 excepts the taxes in controversy from the provisions of title VII, which includes said section 905. They contend that the jurisdiction of this court over suits involving compensating taxes is preserved by the language of section 911, *supra.*

With this contention we cannot agree. In the *Field* case, *supra,* the United States Court of Customs and Patent Appeals very thoroughly discussed the question of jurisdiction of suits to recover compensating taxes collected under the Agricultural Adjustment Act. We quote therefrom:

Title VII of the Revenue Act of 1936 was reported by the Finance Committee of the Senate as an amendment to H. R. 12395, which became said Revenue Act of 1936. The House of Representatives accepted section 905 without modification, and in fact all of title VII as reported by the Senate Committee was agreed to in substantially the form in which it now appears in said revenue act. We quote from said Senate Committee report the following:

\* \* \* \* \* \* \*

Section 905 contains provisions now incorporated in section 21 (d), relating to the jurisdiction of the district courts. *The district courts and the Court of Claims will have jurisdiction of all cases relating to amounts collected under the Agricultural Adjustment Act, except amounts collected as processing taxes.* With respect to processing taxes, a special procedure is provided in section 906 of the bill. The $10,000 limitation on the jurisdiction of the district courts which would otherwise be applicable, is dispensed with in order to relieve the Court of Claims of congestion which would otherwise result. [Italics ours.]

From the foregoing, it is clear, that if legislative history may be resorted to as an aid in the construction of section 905, Congress intended to deprive the Customs Court of jurisdiction of suits to recover amounts paid as compensating taxes, and

to vest jurisdiction over such suits in the United States district courts and the Court of Claims.

Surely legislative history may not be resorted to for the purpose of establishing that Congress did not intend to withdraw its consent to be sued for the recovery of compensating taxes, without also considering such legislative history to determine in what courts Congress intended to vest such jurisdiction.

If section 905 be regarded as unambiguous, to be construed without the aid of its legislative history, it must be held that the Government by virtue of its provisions has either withdrawn its consent to be sued for the recovery of amounts paid as compensating taxes, or that jurisdiction of such suits is vested in the Court of Claims, and possibly also in the district courts of the United States. There is certainly nothing ambiguous in the provision of section 905 reading, "The United States Customs Court shall not have jurisdiction of any such cases."

We believe that is all inclusive to deprive this court of any jurisdiction concerning any case arising out of the imposition of any compensating tax under the Agricultural Adjustment Act.

The contention of the plaintiffs that section 911, *supra*, restores to this court jurisdiction of suits to recover these *compensating taxes* cannot be favorably considered in the light of all the provisions affecting refunds of such taxes levied on "large cotton bags," which, plaintiffs contend, are the subject of these suits. Not only is the holding in the *Field* case, *supra*, very positive, depriving this court of any jurisdiction in suits involving compensating taxes, but, in addition, the provisions of subsection (e) of section 601 of the Revenue Act of 1936 clearly show no intention to vest jurisdiction in this court.

The motion of attorney for defendant to dismiss all of these protests for lack of jurisdiction is hereby granted and an exception to this ruling is hereby given plaintiffs.

Judgment will be rendered accordingly.